IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**<br><br>             **Plaintiff,**<br><br>    v.<br><br>**HENRY COUNTY BOARD OF EDUCATION;**<br>**PAM NUTT;**<br>**BRIAN PRESTON;**<br>**CHARLES VICKERY;**<br>**ERIK CHARLES;**<br>**RAY HUDALLA; and**<br>**HENRY COUNTY SCHOOL DISTRICT, d/b/a**<br>**HENRY COUNTY BOARD OF EDUCATION,**<br><br>             **Defendants.** | **1:07-cv-1054-WSD** |

## OPINION AND ORDER

The matter is before the Court on the original and amended Motions to Dismiss [6, 17] and the Motion to Stay [8] filed by defendants the Henry County Board of Education, Pam Nutt, Brian Preston, Charles Vickery, Erik Charles, Ray Hudalla, and the Henry County School District, d/b/a Henry County Board of Education (collectively, the "Defendants").

## I. INTRODUCTION AND BACKGROUND

This is the second time the Court has been asked to rule on the propriety of hearing this dispute.[1]  In both instances, plaintiff Travelers Casualty and Surety Company of America ("Travelers" or "Plaintiff") sought federal venue to litigate its contractual disputes with the Defendants.

The dispute in this case involves construction of the Timber Ridge Elementary School (the "Project") in McDonough, Henry County, Georgia.  In May 2003, the Henry County Board of Education (the "School Board") and Action Development, Inc. ("Action"), a Georgia corporation, signed a construction contract (the "Construction Contract") for Action to construct a new elementary school at the price of $8,774,000.  As required by law and the Construction Contract, Action, as principal, and Travelers, as surety, executed and provided to the School District a Performance Bond and a Payment Bond.  The bonds named the School Board as obligee and limited Traveler's secondary obligation as surety to the penal sum of $8,774,000.00.  The Performance Bond expressly provides for

---

[1] See Henry County School District v. Action Development, Inc. and Travelers Casualty and Surety Company of America, No. 1:07-cv-1490-WSD (N.D. Ga. 2007).

joint and several liability of Action and Travelers and expressly incorporates the Construction Contract by reference. Welch Aff., Exh. 2 at 1.

In December 2004, the School Board became dissatisfied with Action's progress. The School Board terminated Action for default and demanded that Travelers perform under the Performance Bond. Travelers investigated the School Board's claim and sought bids from other general contractors to complete the Project. Travelers also sought repeatedly to enter into a Takeover Agreement with the School Board, which would have defined the obligations owed by Travelers as surety. The School Board refused to enter into a Takeover Agreement.

Travelers eventually selected another contractor to continue completion of the Construction Contract. By that time, the School Board had already distributed over $4,000,000 in contract funds to Action. The new contractor, J.R. Bowman Construction Company, began work on the school in March 2005, only to discover that Action's previous work was defective, delaying progress on construction. Because the School Board was displeased with the lack of progress being made, it began negotiating with Travelers to have it relinquish control of the Project and to permit the School Board to complete construction of the school.

On April 3, 2006, the School Board and Travelers executed a Partial Settlement Agreement (the "PSA") in which Travelers agreed to pay $5.3 million to the School Board to resolve their disputes. Compl., Exh. A. In exchange, the School Board agreed to complete the Project using Travelers' settlement payment, unexpended contract funds that remained in the Board's possession, and other funds. The parties agreed that the $5.3 million payment would be credited against the penal sum of the Performance Bond, leaving a maximum amount recoverable by the School District under the Performance Bond of $3,474,000.00. The parties also agreed that Travelers retained the right to argue that other payments it made should be credited against the remaining $3,474,000 amount and that the School Board retained the right to dispute the propriety of those claimed credits. The PSA anticipates that the Performance Bond would remain in place until satisfaction of all obligations between the School Board and Travelers. The PSA provides:

> Upon final completion of the Project and discharge by the Surety of all of its obligations to the Board under the Performance Bond and this Agreement, the Board shall execute and deliver to the Surety, a full and final release in favor of the Surety pertaining to any and all matters arising out of, or in connection with, the Performance Bond.

Compl., Ex. A., ¶ 14.  The PSA further states that: "This Agreement, *together with the Performance Bond*, embodies the entire agreement and understanding of the parties hereto with respect to the subject matter contained herein."  Id. ¶ 20 (emphasis added).

On March 30, 2007, Travelers provided the Board with a list of payments it claimed should be credited against the remaining penal sum of the Performance Bond.  The Board rejected Travelers' accounting as insufficient and requested further documentation.  In May 2007, the parties met to discuss their disagreement over the accounting.  At the meeting, Travelers provided a summary of its alleged Performance Bond payments, claiming it had spent $9,284,866.90 on the Project, an amount over $500,000 in excess of the total penal sum of the Performance Bond.  Compl. ¶ 22.  Travelers claimed it had fulfilled all its obligations under the Performance Bond and the PSA.  The Board contended that Travelers was not entitled to a credit against the Performance Bond for all the sums Travelers claimed.  Id. at ¶¶ 21-23.

On May 8, 2007, Travelers filed this action.[2] Travelers seeks a declaratory judgment that it has discharged all its obligations under the PSA and the Performance Bond, that it owes no additional funds to the School Board, that each payment claim by Travelers should be credited against the penal sum of the Performance Bond, and that the School Board has no remaining claims against Travelers under the PSA or the Performance Bond. Travelers named as defendants the School Board, the School Board's members, and the Henry County School District (the "School District"), the body corporate of the School Board and a political subdivision of the State of Georgia.[3]

On May 24, 2007, the School District filed an action in the Superior Court of Henry County, Georgia (the "State Action").[4] In the State Action, the School District asserted claims against Travelers for breach of the Construction Contract,

---

[2] Because Travelers is a citizen of Connecticut, the Defendants are citizens of Georgia, and the claimed amount in controversy exceeds $75,000.00, the Court can exercise diversity jurisdiction over this action. 28 U.S.C. § 1332(a).

[3] Plaintiff originally named the Henry County School System as a defendant. On June 19, 2007, Plaintiff amended its complaint to rename the Henry County School System as the Henry County School District.

[4] See Henry County School District v. Action Development, Inc. and Travelers Casualty and Surety Company of America, No. 07-cv-2376-W (Sup. Ct. Henry Cty. 2007).

the Performance Bond, and the PSA.  The School District also named Action as a defendant, alleging that by "failing to timely prosecute the Project to completion in accordance with the requirements of the Construction Contract, Action materially breached the Construction Contract and the Performance Bond."  Welch Aff., Exh. 10 at ¶ 27.

On May 25, 2007, the Defendants moved to dismiss this case, or in the alternative, moved to stay this case pending completion of the State Action.  The Defendants argue that venue is inappropriate in this Court because of the pending State Action and/or because of a forum selection clause in the Construction Contract.[5]

On June 25, 2007, Travelers removed the State Action to this Court. Travelers argued that Action was fraudulently joined because there was no joint and several liability between Travelers and Action and there was no "real legal or legal connection between [the School District's] claims against Travelers and its claims against Action."  Henry County School District v. Action Development, et al., No. 07-cv-1490, Docket No. 15 at 2.  Travelers argued that although normally

---

[5] The Defendants filed an amended motion to dismiss, incorporating by reference all arguments from its initial motion to dismiss, on July 6, 2007.

diversity jurisdiction would not exist because the School District and Action are both Georgia citizens, the Court should overlook Action because of the doctrine of fraudulent joinder.

On September 6, 2007, the Court found that it lacked diversity jurisdiction over the State Action and remanded the action to the Superior Court of Henry County, where it remains pending.

## II.   DISCUSSION

### A.   The Declaratory Judgment Act and Parallel State Court Proceedings

#### 1.   Applicable Law

The Declaratory Judgment Act provides that the district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (internal quotation marks omitted).  The Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do

so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).

Guided by those principles, the district courts have a certain amount of discretion to decline to entertain an action under the Declaratory Judgment Act, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton, 515 U.S. at 282. Specifically in cases where a parallel suit is pending in a state court, "'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" Ameritas, 411 F.3d at 1330 (quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)).

In Ameritas, the Eleventh Circuit provided the following factors for consideration to aid the district courts in determining whether to abstain from exercising jurisdiction over state law claims in the face of parallel state court litigation: "(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at

issue; (4) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." Ameritas, 411 F.3d at 1331.  The Ameritas factors are meant to serve as "guideposts" for the Court's weighing of state and federal interests in adjudicating disputes.  No one factor is dispositive.  Id.

Other courts have applied the Ameritas factors in determining to abstain from hearing declaratory judgments actions with parallel state court proceedings. E.g., Travelers Cas. and Sur. Co. of Am., Inc. v. E. Beach Dev., LLC, No. 07-0347, 2007 WL 3407049 (S.D. Ala. Nov. 9, 2007).  In Travelers, the same plaintiff as in

this case sought declaratory judgment regarding the scope of its liability on a Performance and Payment Bond. Travelers' federal court action was paralleled by at least four state court actions brought against Travelers by contractors on a construction project. The contractors moved to dismiss the federal action, arguing that the existence of pending state court proceedings favored abstention by the federal court.

The United States District Court for the Southern District of Alabama agreed. The court examined each of the nine <u>Ameritas</u> factors and found that each factor favored abstention. <u>Id.</u> at *11. The court also determined that it was more appropriate to dismiss those defendants who were already engaged in parallel state court proceedings than to stay the federal case. <u>Id.</u> at *12.

### 2. Analysis

The Court considers each of the <u>Ameritas</u> factors to determine whether abstaining from jurisdiction is the appropriate course in this case.

The first consideration is the strength of the State of Georgia's interest in having the issues raised in this case decided in Georgia's courts. This dispute concerns the obligations of Travelers and the Defendants under the PSA, the Performance Bond, and, because the Performance Pond explicitly incorporates it

by reference, the Construction Contract. Those claims all encompass breach of contracts governed by Georgia law. This case arose out of construction of a Georgia school in a Georgia county, and the other parties (the Defendants and Action) are all Georgia citizens. The State of Georgia has a significant interest in having its state courts resolve these disputes. E.g., Travelers, 2007 WL 3407049, at *7.

The second consideration is whether this Court's judgment in the declaratory action would settle the controversy. Plainly it would not. The State Action alleges breach of contract of three agreements against two defendants who are alleged to be jointly and severally liable. This case concerns solely the obligations of Travelers under the PSA and the Performance Bond, and, as the Court has already decided, Action cannot be joined in this case due to non-diverse citizenship. The Court's judgment in this case would leave several issues unsettled. E.g., id. The State Action can consider all parts of this controversy.

The third factor is whether this case would serve a useful purpose in clarifying the legal relations at issue. The Superior Court of Henry County is equipped to make factual determinations with the same competence as this Court – indeed, it can better address the overlapping obligations of this dispute by

considering the obligations of both Travelers and Action, which this Court cannot. This factor slightly favors abstention.

The fourth factor inquires whether this case is being used merely for "'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." Ameritas, 411 F.3d at 1331. The State Action has been removed, and the Court has already determined that its removal was improvident because Travelers' co-defendant, Action, lacks diversity of citizenship from the School District.[6] By filing this federal action, Travelers has sought to prevent Action from being joined and destroying federal jurisdiction, even though Action is jointly and severally liable with Travelers on the Performance Bond. "Despite Travelers' protestations to the contrary, this sequence of events gives rise to at least the pervasive appearance that Travelers engaged in procedural fencing . . . by initiating duplicative federal claims against [the Defendants] . . . on precisely the same issue in [a] state court action[] that

---

[6] Travelers again argues that the School District's joinder of Action amounted to fraudulent joinder, made only to preclude jurisdiction in federal court. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). The Court already analyzed that argument in detail and concluded that joinder of Action by the School District was appropriate. Henry County School District v. Action Dev., Inc., et al., No. 07-cv-1490-WSD, Order [23] at 7-12 (N.D. Ga. Sep. 6, 2007).

[was] not removable to federal court." Travelers,, 2007 WL 3407049, at *8; see also Gen. Star Indem. Co. v. Puckit, L.C., 818 F. Supp. 1526, 1532 (M.D. Fla. 1993) ("declaratory complaints filed in anticipation of a suit and used to forum shop are to be actively discouraged").

Travelers argues, however, that proceeding in this Court is the only way it will receive a fair hearing. Travelers contends that the Superior Court of Henry County will be irreparably biased in favor of its local school board, which is represented by a private attorney who also happens to be a local Juvenile Court Judge. Travelers argues that diversity jurisdiction in federal court exists precisely to prevent this sort of home-state bias against out-of-state defendants. The Court recognizes the tenets of comity and federalism ensconced in federal diversity jurisdiction, and, in principle, agrees. The Court is also bound by the Supreme Court's long-standing requirement that complete diversity exist in cases lacking federal claims, Strawbridge v. Curtiss, 7 U.S. 267 (1806), and cannot hear the State Action. Were this the only factor in the Court's determination of whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act,

Travelers' cause would be more persuasive.[7]  Under Ameritas, however, this consideration is only one of nine.

The fifth factor is whether this case would increase friction between the federal and state courts by improperly encroaching on state court jurisdiction. There are simply no federal issues in this case or in the State Action.  Although the Court technically is empowered to exercise jurisdiction over this case, it would do so at the expense of allowing Georgia courts to decide questions of Georgia law binding Georgia litigants.  E.g., Travelers, 2007 WL 3407049, at *8.  This factor favors abstention.

The sixth factor asks whether an alternative remedy would be better or more effective than this case.  The two remedies available to Travelers are litigation in federal court and the State Action.  As the Court has already explained, the State Action is empowered to hear all aspects of this dispute against all defendants while this Court is not.  This factor favors abstention.

The seventh factor is whether underlying factual issues are important to an informed resolution of this case.  Factual issues appear to have significant import

---

[7] The Court notes that jurisdiction in federal court is not Travelers' only way to seek a fair hearing.  Georgia law also provides for transfer between counties on traditional forum non conveniens grounds.  O.C.G.A. § 9-10-31.1(a).

on this case. Both parties submitted extensive factual declarations in support of their briefing, often telling materially inconsistent stories.[8] Facts are the heart of this dispute. The eighth factor asks whether a state trial court is better positioned to evaluate the disputed factual issues than this Court. Travelers' remaining liability on the PSA and the Performance Bond, if any, necessarily involves a detailed factual inquiry into the propriety of charges Travelers contends should be offset against the penal sum of the bond. That determination requires at a minimum a significant factual record. It may also require the participation of Action, given Action's primarily liability on the Construction Contract and the Performance Bond. The Superior Court of Henry County already has before it the necessary parties to this dispute and is well-positioned to evaluate the various factual contentions. Any factual evaluation by this Court would merely duplicate those efforts. Travelers, 2007 WL 3407049, at *10 ("Rather than having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with

---

[8] The parties are reminded that courts ruling on a motion to dismiss normally assume the allegation in the complaint as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

examining those facts in the underlying case to apply those same facts to the [] claims.").

The final factor is whether there is a close nexus between the underlying factual and legal issues and state law or public policy. The parties concede that there is no issue of federal law in this case and that all legal issues involve application of Georgia law to a dispute that arose entirely in Georgia. This case's sole nexus is with the State of Georgia.

After consideration of the nine Ameritas factors, the Court determines that this case is better heard in the courts of the State of Georgia. At least eight of the factors counsel toward this Court's abstention. The Court is also persuaded by the ability of the Georgia courts to join each of the parties essential to this case, in order to compel their participation in discovery and case procedures and events. "Most importantly, the interests of efficiency, comity, federalism, non-interference with state-court litigation, and avoidance of inconsistent results would all be served . . . in integrated state-court proceedings, rather than by pursuing a two-tracked approach where a slice of the state-court proceedings was also being litigated contemporaneously by a federal court." Travelers, 2007 WL 3407049, at *11. The Court also determines that the principles underlying the Eleventh Circuit's ruling

in Ameritas would be best-served by dismissing this case without prejudice, rather than by a stay.

### B. Remaining Issues

The Defendants also argue that a forum selection clause in the Construction Contract binds this dispute to the Superior Court of Henry County. The Construction Contract provides that : "Any Claims arising out of or related to the [Construction] Contract . . . shall. [sic] be heard and determined by the Presiding Judge of the Superior Court of Henry County, Georgia. The Contractor and the Surety under the Payment Bond and Performance Bond do hereby consent to said Court having jurisdiction over the Contractor and the Surety under said bond concerning all matters arising under the terms of said Contract and said bonds." Welch Aff., Exh. 1. The Performance Bond expressly incorporates the Construction Contract by reference. Id., Exh. 2.

Travelers argues the forum selection clause is not binding upon it because it is permissive, rather than mandatory, and because it was not fairly negotiated. Federal courts distinguish between "mandatory" and "permissive" forum selection clauses – the former binding the parties to a particular forum, the latter providing for non-exclusive jurisdiction in a particular forum. Snapper, Inc. v. Redan, 171

F.3d 1249, 1262 n.24 (11th Cir. 1999).  Georgia courts normally enforce forum selection clauses in payment bond contracts.  <u>Iero v. Mohawk Finishing Prods., Inc.</u>, 534 S.E.2d 136, 138 (Ga. Ct. App. 2000); <u>Harry S. Peterson Co. v. Nat't Union Fire Ins. Co.</u>, 434 S.E.2d 778, 782-83 (Ga. Ct. App. 1993).  Whether the forum selection clause is mandatory and binding on Travelers, including whether it binds Travelers to state court jurisdiction for claims under the PSA, is a question mooted by the Court's prior determination not to exercise jurisdiction over this case.  Characteristics of this case independent of the forum selection clause heavily weigh against exercising jurisdiction.  For that reason, the Court leaves any consideration of the validity and enforceability of the forum selection clause to the Superior Court of Henry County.

The Defendants finally argue that several of them are improperly joined.  Because the Court has determined to dismiss this case, those issues are also moot.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss [6] and the Amended Motion to Dismiss [17] filed by defendants the Henry County Board of Education, Pam Nutt, Brian Preston, Charles Vickery, Erik Charles, Ray Hudalla,

and the Henry County School District, d/b/a Henry County Board of Education are **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**.

**IT IS HEREBY FURTHER ORDERED** that the Defendant's Motion to Stay [8] is **DENIED**.

**SO ORDERED** this 15th day of January 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE